Thank you, Your Honor. Brooks Foster for Plaintiffs and Appellants, McDonald family. Clients are here today, and it's my pleasure to address the court. This case is really about holding Sun Oil Company responsible for reckless and false representations that it made to my client, Tom McDonald, that all the mercury had been removed from a pile of mercury mine tailings, known as calcine. Sun Oil Company made these representations to induce Tom McDonald to buy the calcine. He bought it, believing Sun Oil Company's assurances that there was no mercury left in it. They made these representations about the absence of mercury without having done contemporaneous tests of the calcine, which would have revealed the mercury that was left in it. Mr. McDonald thought the calcine was a valuable construction material. He intended to eventually sell it or use it to construct gravel roads on the many acres of property that he intended to develop. While Mr. McDonald was waiting to do that, on several occasions and over the course of several years, he brought portions of this calcine to his family's residential property and placed it on his driveway and parking area. He used it to pave portions of his property with the gravel, which was one of its intended uses. Years later, the McDonalds learned that the calcine had mercury and other hazardous substances, such as arsenic, remaining in it. As it turned out, Sun Oil Company's representation that all the mercury had been removed from the calcine was false. The McDonalds could not sell or use the enormous pile of mercury-laden calcine that they had purchased. They lost the expected value of the calcine, which it would have had as a construction material. That value is over $1.2 million. Now, I hope you understand, this is an enormous pile of rock. It's a uniformly crushed gravel. It's a beautiful pink color, and it would make a great construction material if there weren't any mercury and hazardous substances in it. Now, the McDonalds, having discovered this contamination, were worried about exposure to it, so they covered the calcine that they had brought to their property with clean gravel. After that, the Oregon Department of Environmental Quality took a sample from the gravel at a McDonald residence and found heightened levels of mercury, eight times the background levels. Considering the risks associated with mercury, which is a potent neurotoxin, considering the reduction in the McDonalds' property value, and considering the McDonalds' duty to disclose the calcine to any subsequent buyer of their property, they want the calcine to be removed from their land. That will cost approximately $70,000. The McDonalds filed a number of claims against Sun Oil Company and Sunoco, the successor to Sun Oil Company. At summary judgment, the district court dismissed the McDonalds' claims for negligence, contribution under Oregon's Environmental Cleanup Law, that's ORS 465, breach of contract, and fraud. The court said these claims were not worthy of a jury trial, and they were not even able to withstand summary judgment. The court said there were no genuine issues of material fact on these claims. At the same time, the district court preserved Sunoco's claims for contribution under the Environmental Cleanup Statutes, in which Sunoco seeks to hold McDonalds liable for Sunoco's remedial action costs associated with the mercury mine that Sunoco operated for many years, the costs associated with the mine waste that Sunoco dumped at the mine property, which goes well beyond the calcine. There are many other types of waste there. In our first assignment of error, we submit that the district court erred in dismissing the negligence claim at summary judgment. The first issue here is whether Oregon's 10-year limitations period for negligence claims under ORS 12.115 should be preempted by CERCLA Section 309, and that's 42 U.S.C. 9658, such that a discovery rule is imposed upon the commencement of that 10-year limitations period. And under CERCLA Section 309, this discovery rule is expressed as a federally required commencement date. That date is the date when the harm and the cause of the harm, i.e., the link to the hazardous substances, are discovered. Any state limitations period that begins prior to that discovery date is preempted. So CERCLA creates this uniform discovery rule for tort claims. This is for state law tort claims, not for CERCLA remedial action cost claims. And it does this for claims involving hazardous substances. Now, under Section 309, it's indisputable that the McDonald's negligence claim could not have expired because they asserted it shortly after discovering the facts of the damage. But the district court agreed with Sunoco's argument that Section 309 does not apply because ORS 12.115 has been identified by some courts as a statute of repose. The district court therefore reasoned there was a distinction, a substantive distinction between a statute of repose and a statute of limitations, and that this distinction was included in the terms of Section 309, which do not use the term repose. Now, what is this critical distinction between statute of limitations and statute of repose? Well, as Sunoco explains it, it depends on the concept of accrual. They say that a statute of repose doesn't have anything to do with accrual or discovery, whereas a statute of limitations is thought of to begin on accrual of a claim. While the district court actually didn't explain the distinction in these terms, it had a little bit different explanation, but it was another technical one, and it did find there was a substantive distinction. The district court noted that the word repose does not appear in Section 309 and concluded that Congress must not have intended Section 309 to preempt ORS 12.115. The district court and Sunoco rely on the Burlington Northern case from the Fifth Circuit. This case is in error. It should not be followed by the Ninth Circuit because it looked no further than the text in Section 309. It failed to consider evidence of the legislative history. It failed to realize that when Section 309 was enacted in 1986, these terms, statute of limitations and statute of repose, were often used coextensively. The critical mistake by the Fifth Circuit of Burlington Northern was thinking that the term statute of limitations is an unambiguous term. Burlington Northern falsely assumed Congress. Let me interrupt you. You've covered this subject very thoroughly in your briefs. So, you know, we've got this pretty well in hand. You've got a lot of issues to cover. Okay, very good, Your Honor. I would like to add. You've had eight minutes of uninterrupted time. It's probably a world's record. Let me ask you one or two questions. I was waiting. Sorry. You're seeking only $70,000? In addition, the lost expected value of the calcine pile, which is over $1.2 million. Yes, I thought there was a little more than that. It's both. On the Cross complaint, what causes of action did the district court leave in effect? On the counterclaims by Sunoco? Yes. They have contribution claims under the environmental cleanup statutes, CERCLA and ORS 465, to get the McDonald's to pay for some of their costs at the mine to address the risks that DEQ identified there, to investigate or remediate them. Now, on your remediation claims, there seems to be a bit of a problem with the failure to exhaust the administrative remedies. I'm unaware of any authority that applies the exhaustion of administrative remedies to claims for remedial action costs. These are private rights of action, and so there isn't really an administrative avenue for getting recovery of private party remedial action costs. You don't have to get the approval of the state to the remediation in advance? It's our position that you do not. It's Sunoco's position that you do. Who's right? Go ahead. Well, we think they're trying to add something to the statute that's not there. It's also inconsistent with CERCLA, where that has been expressly rejected. Thank you. I thought a fun fact for the Court would be to look at some of Your Honor's opinions, and I found one by Judge Strom, where he actually did use the terms statute of opposing limitations coextensively, and that's Norwest Bank, Nebraska v. W.R. Grace, 1991, Westlaw 331608. And he describes a statute of oppose that appears in the state statute of limitations, not separate from it, in it, which is kind of an interesting use of the terms. He also reiterates the long rule, and I'm quoting, the long rule of Nebraska that a statute of limitations is a statute of oppose. There's also an opinion by Judge Reinhart in Allen v. Robbins, 752 F. Second, 1365. That's a 1985 case where he wrote, statutes of limitations are primarily statutes of oppose. So I'll just add those to the extensive list. You didn't find anything on me, did you? I looked. I looked really hard. Well, maybe while you were looking, you were in the state of oppose yourself. I believe I was sitting down at the time. No, I know I've got something. If I haven't, I'll have to correct that because I want to have a... Anyway, I don't want to go over. I was waiting for you to jump in, so thank you for letting me go. But, you know, I think if you look closely at the legislative history, if you look closely at the 301E study report, if you look closely at these things, you'll see why many, many courts have held that really the only way to construe this section consistent with the intent of Congress is to say that it applies. Let me let you go because you've got a nice voice, good delivery, and you've got a group of attractive young ladies looking at you. Some people from my office, Your Honor. Oh, your office. Yes. I thought they were your clients. But I'm running out of time, so... Now, doesn't the parole evidence rule bar your breach of contract claim? Well, now, that's a de novo review, first of all. I think that's important to remember. And we think there are many, many reasons in the facts why this Court could find that it does not, that this is partially integrated, and that it was natural for the parties to omit the agreement regarding the condition and quality of the calcine from the deed. There's no integration clause, no non-status clause. The deeds are generally presumed not fully integrated. There's no warranty language of any type in the deed. There's no promise regarding the calcine pile itself. And I think that's an important point. Sunoco could have removed the pile after the handshake and the oral agreement and before executing the deed, which was only signed by Sunoco, and they wouldn't have breached the deed. There's nothing in writing as far as the tailings are concerned. Well, they say it uses the word calcine in the deed, and that's true. But it's in a list of surface minerals, and it doesn't say anything about the pile itself. And so it's just a fleeting reference. Is your suggestion on that issue that it be remanded because of a factual dispute? No. I should clarify that. That's a de novo review for the Court, so we think you should find that the Pro Evidence Rule doesn't bar this oral, this evidence of the oral terms. However, it's closely related to the merger rule, which we think is a question for the fact finder at trial. So that would be a matter to remand. Can you win on one and not on the other, or do you have to win on both? We have to win on both. But I think given that merger is, under Oregon law, a question for trial, this Court could give us the Pro Evidence issue, and we could go back and we would be going to trial where a fact finder would be able to look at all the evidence and decide whether the parties intended merger. Is there any evidence in the record that Freeman was reckless when he told McDonald that the calcine was safe? We think it would be just a matter of common sense for a jury to decide that he was. First of all, you're dealing with representations about mercury in a conversation in which the health risks of mercury associated with the bricks. Remember this from the facts. The bricks from the old mine furnace were said to be dangerous. Don't use them. Calcine was said to be safe, completely free of mercury. And they posit that he had a reasonable basis to say that if he did say it, because in the 1950s, Sun Oil Company was testing the mercury to see if there was any more commercially recoverable calcine. Could they run it through the furnace again and make more money off this rock? And they said, well, that wouldn't have discovered the levels in the rock. But at the time of the representations, if someone says to you, there's no mercury in this rock, and you believe him, and it turns out he's wrong, and it turns out he could have known if he had just done some simple lab testing, I think a jury, applying its own community standards, its own sense of right and wrong, could easily say, well, that's clearly reckless. We don't allow that. That's not good. That's not fair. So I think there's ample evidence of recklessness. Well, is running a test to determine whether there's mercury in this calcine, is that expensive? Not very, Your Honor, although I'm not sure exactly what the evidence shows on that issue. I mean, here's your client buying this property, and all these materials are there, but your client didn't have a test. Well, I think that's a separate issue. I think that would also be a jury question. We're entitled to inferences in our favor of summary judgment. If a jury were to decide on that issue against us, we'd be in a different posture here. All right. You want to save some time? Yes, sir. Thank you. May it please the Court. My name is Hal Siegel, and I represent Sunoco, Inc., and the related entities, which are all a part of Sunoco, Sun Oil Company in Cordero. To hear plaintiffs tell us the purchase that Mr. McDonald made way back in 1973 was just about a pile of rock called calcine, but what he actually did was buy 2,600 acres of land for $65,000. Just three years later, he more than doubled the purchase price. He sold it for $150,000. He could have made a lot more, he testified, but he wanted the money in a hurry because he was about to buy into an auction business. He was a highly sophisticated businessman. He participated in the purchase of close to 13,000 acres of land before this. He had an airplane dealership. He had a business, all of this, as of 1973, which leased out heavy construction equipment, and he got 26,000 acres of land for $65,000. What that got to do with whether or not the calcine had mercury in it and the representation was made to him that it was safe. Because in the deed for that, he didn't- All of these other things are irrelevant as it relates to that issue. Well, it's not irrelevant in the sense that, and this relates to the contract claims and the parole evidence and merger issues. He didn't pay a separate price for the calcine. He wasn't out to buy the calcine. The calcine came along with it, along with other minerals that were on the surface. The sun retained the rights to the mine below the surface, and so there wasn't- That's an important fact, and the deed references calcine, talks about its suitability for road building and construction purposes, which undisputedly was true. It was used for that purpose at the time, and for 30 years, people were using calcine on roads. Mr. McDonald didn't make much of an effort to sell the calcine, and he testified that when he tried to, the market that he had thought was there was not there. The point is they addressed calcine in the deed, and the deed, which had a lot more detail than a normal deed, and for example, a right for him to be indemnified by Sunoco in the event that Sunoco's mining injured him. It wasn't just about the property. All made no mention of the so-called representation. It was not part of the contract, and what he's doing with this case is trying to circumvent what is a contract with other theories of liability for which there is not a legitimate legal basis, and that's what troubled the court below. He doesn't have, and he didn't really argue here that he had a claim under the written contract, because the written contract didn't contain the representation that the McDonalds are basing now their entire case on. It nowhere says that the calcine was free of mercury. Their contract claim is barred by the parole evidence rule in Oregon and by merger, because under the parole evidence rule, the extrinsic evidence of the so-called representation would only come in if it was something that would not naturally be part of the written document of the deed, and since calcine was discussed in some detail in the deed, it would have been unnatural to exclude it. The other criteria for the parole evidence rule for admitting extrinsic evidence is whether separate consideration was paid for the calcine, and that's why I mentioned what the contract was really about. It's undisputed that there was no separate money paid for the calcine. In fact, what Mr. McDonald said was he kind of saw the calcine, quote, as a sleeper. It was something he was getting even beyond all this land that he was purchasing. And by the way, when he sold the land, he didn't sell the calcine pile, and he still doubled what he paid for it. The merger, his claim also fails under the merger doctrine for similar reasons. Again, he needs to import this representation, which is not in the written contract, into the deed, and to do that under the merger doctrine, he needs to show that the calcine was collateral to the written contract. Can he prevail under the merger doctrine if he doesn't prevail on parole evidence? He likely would fail under both. They're similarly related. No, no, I said if he prevails under merger. Yeah. Could he still prevail if he didn't survive the parole evidence rule? If he didn't survive the parole evidence rule, his contract claim is barred. His claim about the representation about the calcines is barred. So that he would have to win on both the parole evidence and the merger issues? Yes, and they've conceded that. Are there any cases that say that other than – I've seen a number of district court cases you've cited in which there had been the approval of the Oregon agency on remediation, either an order or an approval. Are there any cases which say that without that you cannot make your claim? There is no case – well, other than this case, there is no court prior to this time that has had to come – has reached – there is no – there are many cases in which what happened was Oregon did approve the work. There are no cases that we could find and that McDonald could find in which contribution was allowed where Oregon had not approved the work. Or prohibited, either way. There's not a case squarely, absolutely squarely on point, but it's very evident in the Oregon statute itself. Because the Oregon statute provides that the State has to approve the work and make sure it's consistent with environmental protection. Under the Superfund statute, which is very different, you have the National Contingency Plan, a whole structure that you have to comply with in order to seek recovery for remedial work. Oregon doesn't have that, and that makes the approval of the administrator crucial. So what we're basing our argument on is that structure of the statute, the fact that there are statements in the cases – for example, the Boeing case that we cited – that the work is done under the approval of the Oregon administrator, and that there is no case in which cost recovery or contribution has been allowed where the work was not approved. That, I think, is the answer to your question. But we don't have a case specifically wrestling with that issue the way this case does. Is it possible to have retroactive approval? Excuse me? Is it possible to have retroactive approval? I don't know the answer to that, but I can tell you that doesn't exist here. In fact, the State has specifically said that they've not required any action on Mr. McDonald's land. And, in fact, the level – and I think that's because the level of mercury that was found at the driveway is an order of magnitude – in other words, about one-tenth of what would trigger cleanup, even under a very rigorous residential standard. It's even a much smaller percentage of what would be required under a commercial standard. And I would also point out that this case really isn't about the environment, because Sunoco went in, never argued with the State, and agreed to study the mine and everything else. It's just that the State was saying there was nothing needed on the McDonald property, which is a separate – he has a separate property that's not part of the mine area. In the cross-complaint, you're seeking damages for remediation? Well, he – in a legal sense, Mr. McDonald shares liability for the mine site, because he's – under his own theories, you know, he was an owner of the mine site, and he conducted operations at the mine, removing materials from it during his ownership. I will tell you that we have often told the McDonalds that if they weren't continuing to pursue this case, that's not a claim we need to pursue. We've told them that flat out. Do you have a remediation order from the State? Excuse me? Do you have a remediation order? We have a consent agreement with the State, where we agreed, and then it was put into a consent order to do work. And I will tell you the work at the site was not, in the end, extensive. It was some fencing and some protection of a bat species. This site really never turned out to be a real problem to water or to human health in the eyes of the State. So – but I would like also to mention the negligence issue, because the – all of the McDonalds' claims are really efforts to get around the fact that they don't have the representation they say now, in retrospect, 35 years later, about the calcine that was so important in the contract. So they have a problem under the contract with merger and parole evidence. They assert negligence claims. Their negligence claims fail for two reasons. One is the statute of repose. The other is that the calcine is a matter covered in the contract. And the case law shows that when you have a contract, the parties have defined the duties between themselves, and it's the contract claim that governs, and you can't also bring a tort claim. The duty is already defined in the contract. There are some rare exceptions to that which don't exist here, where there's a special relationship of trust, like between a lawyer, a client, or doctor, patient. But the contract here, are we referring to the deed? That's correct. And it's only signed by your client? Yes, that's the way it would work. What happened was Mr. McDonald's lawyer prepared it, and he put in a lot of details that aren't normally in deeds, like that the calcine and other materials could be used for road building and construction, which everyone agrees was true. It includes a purchase price. It includes other things. So it's more than a deed, but it was styled as a deed and worked as a deed. And so Mr. McDonald's lawyer prepared it. Sunoco signed it upon payment by Mr. McDonald. Mr. McDonald was sophisticated. He had a lot of business experience. He had his lawyer prepare it. So that's why we refer to it as a contract. And what I'm trying to say is it's just not a deed that says the property, now the title transfers from one party to another party. It has a lot more in it. It doesn't have any representations of any type, does it? It did have some. It had the representation in it that the calcine and other materials were, quote, suitable for road building and for other construction. And, Your Honor, I'm happy to address more of the contract if you prefer it. And otherwise, I would like to address a little further the negligence claim, unless the court prefers otherwise. On the negligence claim, so on the one hand, and I think what got us into this discussion was the relationship to the contract issue. The fact is that the exceptional circumstance where you can bring both you don't have that special relationship. And it's not as though the calcine is not mentioned in the deed, the contract. It is. Turning back to the issue under Section 309 of CERCLA, the literal language of the statute refers to statutes of limitation. And it says, Limitations as reflected in state statutes of limitation and in common law. It does not use the phrase statute to propose the study report, the underlying that was prepared for Congress before it enacted Section 309, discusses statutes of repose, statutes of limitation, recognizing they're different things. And they're different. They are quite different. The word repose can be used in many ways, but when you have a statute of repose, it's different. And the reason is that the statute of limitations doesn't begin to run until a claim is accrued. All the elements are there. So under some statutes, it may be the act of omission plus knowledge, plus injury. And other statute of limitations may not require the injury to have occurred. Under statute of repose, there's been a legislative determination, a policy determination by a state, and sometimes by the federal government, because there are federal statutes of repose also, that even if this claim hasn't even fully accrued yet, after 10 years, 20 years, 30 years, whatever it is, it's just too late to bring a claim that there's a societal interest in putting an end to litigation in that area. They are very different. And so Congress's decision not to use the phrase statute of repose in Section 309 is significant. And to rule otherwise is really to add language to the statute that isn't there. So Section 309 does not preempt the Oregon statute of repose. There's also a fundamental issue. In a sense, the Court might not need to reach that issue, although I think it's an important one, because the statute, the surplus statute, the preemption statute does not apply to almost the entirety of Mr. McDonald's claim. As counsel for Mr. McDonald has explained in detail, his claim is really about the fact that the calcine wasn't worth what he thought it was. Paid $65,000 in 1973, he's now saying the calcine itself is worth $1.2 million and that he's not getting the value of that because it turned out that there's a half a percent of mercury that was undetected by the undisputably, the equipment in use at the time would not have detected it. Sunoco would have had every reason to believe the mercury was gone. It's undisputed. And there's no contrary test results or anything like that in the record. But in any event, he's saying it doesn't have its value. That's a claim for lost economic value. Section 309 only applies on its very face to, quote, exposure, end quote, to hazardous substances. This is not an exposure argument he's making. It's an economic claim. Now, he does make a claim, even though he hasn't spent the money, that he's going to increase the cost if he completely recovers his driveway of $70,000. That may relate to exposure of the property to a hazardous substance, but the bulk of the claim, the $1.2 million, doesn't even relate to that issue in the first place. So the statute doesn't apply almost entirely. And then I get back to the point I made in the beginning, which is there's really not an issue of negligence in this case in the first place because it's a contract case. And he's just trying to circumvent the contract. I'd also like to address the fraud issue because I think the district court had ample basis to dismiss a fraud claim based on absolutely undisputed facts in the record. It's important to consider what the nature of this record is. Mr. McDonald's entire fraud case is based on statements by a representative of Sunoco who came out to negotiate the sale of the mine with him of the property, the 2,600 acres. Statements by Mr. Freeman, well, unfortunately for us and for everybody, Mr. Freeman is no longer alive. Mr. McDonald doesn't produce any documentation of any representation. And he's not saying it was intentional. He's saying it was reckless. And the reason he says it was reckless to say that there was no mercury if it was said in the tailings is that there was, in fact, it was found 30 years later that, you know, with the equipment we have available today, you can find a half percent of mercury that the mining process couldn't get out of it. But it's undisputed that Mr. Freeman would have had every reason to say there was no mercury in the tailings, because all the testing done at the time would have said that. And Mr. McDonald doesn't have any evidence that there's no expert or someone who would know about sales, particularly sales of mines, who would say, you know, normally he would have gone out and tested it further before making a statement before the sale. The other thing I think that clearly disturbed the district court, I mean, the whole case is based on Mr. McDonald's testimony. And all of this is now before the court. There's nothing more for a jury to learn about, really. And he testified extensively in his deposition that he had a friend of his, Ray Whiting, who'd been himself a former owner of the mine, help him with the transaction. And Mr. McDonald said that Mr. Whiting also said there was no mercury. He was unclear in his deposition as to whether it was Mr. Whiting or Mr. Freeman or both of them who actually made this so-called representation. He said, well, it would have had to have been that Mr. Freeman said it or approved it, but they were both talking about it. Mr. Whiting was working with him. He even, so grateful was he for Mr. Whiting's help, Whiting was his friend in helping him with the purchase, that he deeded over to him 40 acres of land, of this land later, including the area where the mine is. So I think you have on the one hand that if the representation was made, it would have not been reckless given the kind of testing. I mean, reckless is a very high standard. It's just not near negligence. And then you have so much ambiguity. Mr. McDonald himself is unsure exactly who said what, whether they agreed or not, and one was his own representative. And then you have on top of that, to prove fraud, it's not just preponderance of evidence. It's clear and convincing evidence. There was just no way that based on the undisputed facts in the record that fraud could be found under that circumstance. And I think that that was very troubling to the district court. I think we have, that I have largely addressed the other issues. I would just say in good part, in summary, that this is at root about a meritless contract claim. All of this is about an effort to get around the fact that the so-called representations, which are doubtful in themselves, were not in the contract, which governs the relationship between Mr. McDonald and Sunoco. And all of his claims have fundamental legal deficiencies based on undisputed facts. There is not more to be heard. The evidence in this case is very well developed. It's basically Mr. McDonald's testimony, the deed that was discussed earlier, and that's it. If we conclude that the Section 309 also applies to statutes of repose, so that this action is timely brought, is the rest of the, as far as the negligence claim is concerned, is that then a question of fact for the jury? No, Your Honor. And the reasons are twofold. One is that the most important one is that the duty between the parties is set by the contract. The calcium is referenced in the contract. There's no special relationship like lawyer-client or doctor-patient. So the negligence claim is precluded as a matter of law by the contract. Have you brought in the services of our court mediator? We tried. Yes, we did before this appeal proceeded and below in the district court. And we would be open to doing so again. Thank you. Thank you, Your Honor. If it pleases the Court, it's clear the district court had some strong opinions about who should win this case. But we think he impermissibly drew inferences against our clients at summary judgment, took issues away from the jury where there were genuine issues of fact. And I'd like to just mention a few points quickly to reply. They emphasize there is no separate consideration. Well, that's one prong of the test in Oregon law. The other one is whether it was natural to omit the oral term from the writing. We think it was. Why would it be natural? It was a deed and, well, we have many reasons, but one that I haven't mentioned yet. Did your client's attorney prepare the deed? That's correct, but the attorney wasn't involved in the initial agreement. The deed is just the consummation. It's an instrument to convey property rights. And every one of those rights in the deed runs with the land. The promises regarding the calcium pile were personal to Mr. McDonald. The warranties about his condition were personal to Mr. McDonald. It's not something that Mr. McDonald would have intended to appear or that the parties would have intended to appear in a deed that would run with the land to subsequent purchasers. Well, give me an example of what you have in there, the deed that runs with the land. Well, the mineral rights. In fact, part of the detail in the deed is so that Sunoco could reserve certain rights at the property to underground minerals. That runs with the land. The promises where Freeman says it's clean to Mr. McDonald, that's not something Mr. McDonald wants to put in the deed because he's relying on Freeman's representations. Now, I'd like to correct a couple things. The deed does not say suitable. It does refer to calcine and says used for road construction, but the only way to understand that is to go to parole evidence. So they're already bringing that in, saying, well, the representation said it was suitable. Suitable wasn't in the deed. They also said at the time the testing wouldn't have detected the mercury in the calcine. Mr. Composite Counsel said that. That's not the undisputed evidence. The undisputed evidence is that at the time, contemporaneous with the sale, lab testing would have detected the mercury, and they're relying on supposed assay testing in the field in the 1950s, which is very different. It serves a different purpose. Well, that would have cut both ways, the fact that it could have been tested at the time this transaction was entered. I see what you're getting at. That may go to one of the elements of fraud that was not a basis for the district court's decision. We think it just raises a question of fact regarding, I suppose, reasonable reliance or failure to take precautions. We think what Mr. McDonald did was reasonable under the circumstances, given who he was dealing with and what was said, but I think that's a separate issue. It wasn't even argued by Sun Oil Company in their briefs. Just to address the requires exposure, we have exposure at the property, and Section 309 doesn't apply to claims individually, which they're trying to split, but to entire causes of action if you read it, applies to actions. Thank you, Your Honor. Just one quick question. The counsel says the purchase price that was involved for this was $65,000, and you're seeking $1,200,000. Is that correct? Yes, but let's keep in mind the timing. 1973, $65,000, that's worth quite a lot today, and this was, in fact, the expected value of the calcine, over $1.2 million in today's dollars. Let me say that again. Well, you paid $65,000. The calcine had a value of how much at the time this transaction occurred. The cost of the purchase in 1973 was $65,000. That was for the land and the calcine. The value of the calcine today. How much land? How much would that be worth today? How much land? How many acres? I think it's several thousand acres, but it's arid rural property. Acres are easy to come by there, especially in 1973. But I agree with the court's suggestion, Judge Strom's suggestion, that those facts are somewhat irrelevant to the issues before the court. But I think opposing counsel is raising them to create some sense of bias. They made millions of dollars off the mine. I don't know what that has to do with it, either. Judge Ferguson asked about mediation. Do you see any possibility of mediation? Well, we always encourage our client to participate. Well, you've had it twice already. Is it hopeless, or do you think a really top mediator might be able to help you? That's a difficult question. I'd hesitate to say it's hopeless, but I think there's still a big difference, and it could be difficult. But I would always encourage more efforts in that regard. But as you know, it's really my client's ultimate decision, and it depends on what's being offered and what the differences are. Well, you know, as a practical matter, if there's a reversal, the matter's going to go back to the same judge, right? That's correct. And you do have a lot of problems here, don't you? Well, Sun Oil Company's raised many, many issues, and they're very well defended, and we acknowledge that, but we think we have a right to relief. You think you'd do better before a jury than the judge? That's correct. Okay. All right. Thank you. Thank you. Good luck. Good morning. All right. Will, you want to say something? You're just getting up. Is that it? I'm stretching, but I think I'm going to sit here. Just stretching. Oh, okay. All right. We're going to recess, and the matter's submitted. We're going to recess and reconstitute this panel. Thank you.
judges: Pregerson, Reinhardt, Strom